```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 2/16/17
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
GEORGE KALTNER (individually), et. al.

                Plaintiffs

- against -

DAVID STEWART (individually), et. al.

                Defendants.
------------------------------------------------------------------x

Civil Case No.:
7:16-cv-09337-KMK-LMS

**DECLARATION OF
DAVID STEWART**

I, David Stewart, of full age, under penalty of perjury, do declare and say:

## BACKGROUND

1. My name is David Stewart.

2. I used to work as a personal assistant for Mr. George Kaltner with respect to a number of different companies that he owned and operated, including Avatar Outsourcing, Inc., Voiceless Technologies, Inc., Sales Technologies, Inc., and Avatar Technologies, Inc.

3. It is my understanding that the other side is asking the court for a preliminary injunction for the following:

> 1. Soliciting employees, both current or former, of Plaintiffs to: a. Work for Defendants; b. Provide information or documentation regarding Plaintiffs' business activities; and c. Provide false testimony about Plaintiffs through payment in this or other matters.
>
> 2. Utilize Facebook or other social media platforms to post defamatory, confidential or business information about Plaintiffs including, but not limited to, payrolls, employee lists, or financial records;
>
> 3. Transferring the domain "Avatardialler.com" away from its current hosting service, GoDaddy, to any other website hosting service, either within or outside the United States;

4. I also understand that Mr. George Kaltner and the companies he owned are suing me for a number of things from trademark infringement to the "AntiCybersquatting Consumer Protection Act."

5. I hope that with this declaration I can clear up the record and give the Court the truth about what is happening here and what the Plaintiffs are trying to do. I also hope I can give the Court an accurate background about the work I performed as Plaintiffs' employee.

6. I think once the Court understands what is happening here, it will see not only how ridiculous this case is, but also understand what the Plaintiffs are really afraid of, why they started this case, and why this case should be dismissed.

7. I started work for Mr. Kaltner on December 8, 2011. At the beginning I had no official job description, but basically my job was to assist on various tasks at the office, wherever help was needed. My work included billing clients airtime.

8. Although I no longer have access to my official work email address, before I was terminated, I was able to save some of those emails showing the type of work that I did for the company.

9. Attached as Exhibit A, I have a bunch of my 2011 and 2012 emails which show the type of work I sometimes performed. Basically I received instructions from a number of people like Bob DiCesare, the VP of Indirect Marketing, Carey Esrael, Account Executive, Jim Byrne, also Account Executive, and of course Mr. Kaltner himself and tried to follow them as best as I could.

10. In July 2012, Mr. Kaltner ordered us by email to incorporate. I have never "incorporated" before, nor did I particularly want to. But Mr. Kaltner instructed Maxim Doumkine (of Sales Technologies) to give us specific instructions about how to incorporate. Afterwards, he applied for a Federal Employer Identification Number on our behalves. The relevant emails are attached here as Exhibit B.

11. Despite the incorporation, my duties, tasks and responsibilities did not change at all. It is my understanding that Mr. Kaltner forced us all to incorporate for the sole purpose of avoiding payment of taxes and benefits.

12. From 2012 to 2015, I continued to function as Mr. Kaltner's assistant and performed a variety of different tasks for him. I was given a number of different tasks and responsibilities and shifted from time to time whenever circumstances changed. But throughout that period, my primary responsibility was always to function as Mr. Kaltner's assistant.

13. Attached as Exhibit C, for example, please find a number of emails from Mr. Kaltner instructing me to make travel arrangements, order food, and perform other miscellaneous tasks. Again without access to my company email, I have only a limited number of emails at my disposal.

14. I understand that Mr. Kaltner now claims that I provided, bookkeeping, accounting, and other "business management services". As my emails show, it was in reality nothing of the sort. Plaintiffs had their own accountants. While some of my tasks from time to time did relate to bookkeeping, it was in only a limited capacity.

15. But as Mr. Kaltner's personal assistant, I became aware of various wrongdoings and illegalities engaged in by Mr. Kaltner.

16. In April 2015, I was informed by Mr. Kaltner that my services were no longer required and I was terminated from my employment. After I was fired, I began looking for other employment without success.

## HARASSMENT BY PLAINTIFFS

17. The reason for my termination has nothing to do with work performance.

18. During my time working for Mr. Kaltner, I witnessed a number of irregularities and even some illegal activities.

19. For example, one of these illegal things for example related to a law suit Mr. Kaltner commenced in the Philippines against a competitor.

20. In August 2014, Mr. Kaltner directed that I travel to the Philippines to meet with Ted Nehls to deliver certain documents to the court in the Philippines so that Mr. Kaltner can obtain a search warrant to disrupt the operations of a competitor that he alleged was engaging in copyright infringement. We were tasked with delivering this signed and notarized letter.

21. Once we were there, I learned that Mr. Kaltner didn't just want to deliver a letter, he also wanted to deliver money to the Philippines judge. He gave specific instructions via email, telling Ted to "wait for warrant before handing over money to judge". (Exhibit D). He also ordered me to go with Ted and participate in the transaction. I of course refused to participate, which was one of the reasons why I think Mr. Kaltner stopped trusting me after August 2014.

22. In the end, Mr. Kaltner did get the search warrant he wanted, was able to seize the competitor's equipment, and shut down their operations.

23. This event made me realize for the first time how powerful Mr. Kaltner was in the Philippines and the extent that he would be willing to go against anyone in his way.

24. Because of my unwillingness to participate in this and other illegal activities, that was the real reason I was terminated.

25. After my termination though, Mr. Kaltner was not content to simply let things go. I suspect because of my knowledge with respect to the operations of Mr. Kaltner's various dummy entities, and also my knowledge of the irregularities and illegalities, with respect to Mr. Kaltner's various entities, Mr. Kaltner began threatening me with legal action.

26. For example, in August 2015, I received a letter from Mr. Kaltner's attorney. (Exhibit E). Underneath all the fancy jargon, the message was simple. Mr. Kaltner was prepared to bring an action that would "undoutedbly cause you legal expenses" and that he would "spare no expense enforcing any judgment against you [me] through asset investigations". They were willing to settle but only if I was willing to sign a "Confession of Judgment in favor of Avatar, in the amount of $100,000, which they will not file so long as you [I] remain complaint." Basically they wanted me to keep quiet about Mr. Kaltner's illicit activities.

27. Mr. Kaltner himself also threatened me, but less politely. In his email (Exhibit F), he threatened "we really don't want to force you into bankruptcy because

of some misunderstanding on your part. This is a distraction to us." Mr. Kaltner knows this lawsuit is completely baseless but he was confident that because I "need money being unemployed" and because I didn't "want to have some large legal bills eating into whatever you put aside", he could bully me into signing whatever he wanted and force me to keep my mouth shut.

28. This lawsuit is the culmination of Mr. Kaltner's threats.

### THE PRELIMINARY INJUNCTION

29. As discussed above, Mr. Kaltner wants to stop me from:

   1. Soliciting employees, both current or former, of Plaintiffs to: a. Work for Defendants; b. Provide information or documentation regarding Plaintiffs' business activities; and c. Provide false testimony about Plaintiffs through payment in this or other matters.

   2. Utilize Facebook or other social media platforms to post defamatory, confidential or business information about Plaintiffs including, but not limited to, payrolls, employee lists, or financial records;

   3. Transferring the domain "Avatardialler.com" away from its current hosting service, GoDaddy, to any other website hosting service, either within or outside the United States;

30. The truth of the matter is with respect to (1), *I have never solicited any employees*. I have no company, and no business. David TPO LLC was created and paid for by Mr. Kaltner because he wanted to avoid payment of taxes. It did not exist before I was hired by Mr. Kaltner and has not done any business since I was fired.

31. Mr. Kaltner operates through use of fear. I have no doubt that he has made it clear to everyone who is working for Avatar / Voiceless, or any of his other entities, that if they do not cooperate with him, that he would destroy them.

32. He is not above using whatever tactics necessary to get what he wants.

33. In the motion papers, they claim that I was soliciting employees. They claim that I own avatardialler.com. The basis of that belief is a text message between me and an ex-employee of Avatar / Voiceless.

34. The reality is I suspected that the employee contacting me was a trap set up by Mr. Kaltner and so I just made up a random email address hoping to get rid of her. I do not have the email address davids@avatardialler.com. Before this lawsuit, I didn't even know that Avatar Dialler was a real company. I know literally none of the people who work at or own Avatar Dialler.

35. So as for the part of the request that I do not transfer "Avatardialler.com" to any other website hosting service, I have no objection to that because I do not own Avatardialler.com. Any restriction may negatively impact the actual owners of that domain name, but as I am not an employee, owner, or shareholder, of Avatardialler.com, it is not a matter of concern for me.

36. I was not trying to solicit anyone. It was the employee who repeatedly contacted me. Notice in the text message excerpts provided by Mr. Razzouk, she explicitly states "Discuss to me the job. Ive been telling u." Attached is a full copy of our back and forth text messages (Exhibit G). She reached out to me specifically to assist Mr. Kaltner in entrapping me.

37. The reality is over the last year, I have been working as an Uber and Lyft driver. Attached is a redacted certification. The last thing I want is for Mr. Kaltner to know more about me so that he can further engage in harassment, but I want the Court to know the truth of the matter.

38. The biggest thing though is not "solicitation". I don't have a company. And the employees who reached out to me may have well been requested to do so by Mr. Kaltner or Mr. Razzouk.

39. The key request here is to stop me from soliciting employees to provide "false testimony". Mr. Kaltner was aware that I was looking into pursuing a Fair Labor Standards Act action against him. I was never paid overtime during my period of employment because I was falsely labeled an independent contractor. The purpose of this injunction is to prohibit me from reaching out or contacting other employees in order to build a case against Mr. Kaltner.

40. I hope with this declaration, the Court now has a better understanding of the actual situation here and can make a determination with respect to the motion before the Court.