

www.daiassociates.com

**New York Office**
Times Square Plaza
1500 Broadway, 22nd Floor
New York, New York 10036
Telephone: 001-212-730 8880
Facsimile: 001-212-730 8869

**Shanghai Office**
International Finance Center
8 Century Avenue, Tower 2, 8th Floor
Shanghai (Pudong) 200120, China
Telephone: 0086-21-6062 7268
Facsimile: 0086-21-6062 7288

January 9, 2018

**VIA ECF**

Hon. Lisa M. Smith, USMJ
United States District Court
300 Quarropas Street, Courtroom 521
White Plains, New York 10601-4150

  *Re:*  Avatar Outsourcing, Inc., et. al. v. Stewart, et. al.
      Civil Case No.: 7:16-cv-09337

Your Honor:

  The undersigned represents Mr. Stewart in the above referenced action.

  This letter is in response to the January 3, 2018 letter filed by the Plaintiffs in this action alleging discovery violations.

  With respect to the first issue of alleged spoliation, the imaging work as referenced in the letter took place on January 4, 2018. At the time, Mr. Stewart produced all electronic equipment in his possession. With respect, the issues raised in Plaintiffs' counsel's asserted claim is deficient for a multitude of reasons.

  The first allegation is that Mr. Stewart's computer was "my client's computer" which was taken and "never returned notwithstanding multiple requests." That issue is not relevant for discovery purposes, but attached please find correspondence from Plaintiffs showing that Mr. Stewart did in fact return the company issued device and Plaintiffs' confirmation.

  The second allegation is that Mr. Stewart currently uses an iPhone 6, which was released September of 2015, and "months after my client notified Mr. Stewart of their intentions to sue." The instant case was commenced ***December 2016.*** Generally speaking, people keep their cell phones for a two year period (*See*

https://www.nytimes.com/2014/03/13/technology/personaltech/the-radical-concept-of-longevity-in-a-smartphone.html). Plaintiffs' initial threats of a lawsuit were in August 2015. In neither threat did Plaintiffs request that Mr. Stewart keep his telephone. Copies of both are annexed herein.

With respect to Mr. Stewart's interrogatory responses, we disagree that the "vast majority of interrogatory responses were improper." The following is a point by point rebuttal of the allegations.

1. Defendants only named themselves with no further response. The interrogatories were answered by Mr. Stewart with assistance of counsel. No one else assisted in the answering of the interrogatories. It is not clear what more counsel for Plaintiffs want.

2. Defendants' version of the facts is pretty simple. Mr. Stewart was an employee who was treated wrongfully as an independent contractor and denied overtime. He filed a claim with the Unemployment Insurance Board and threatened and eventually did file a FLSA claim. Defendants responded by bringing this outrageous claim alleging trademark violation and unfair competition, alleging that Mr. Stewart was some mastermind operating two competing businesses, one based in Pakistan and one in England.

    Mr. Stewart cannot provide any facts relevant to the trademark allegation because he knows absolutely nothing about those allegations. He does not know any of the other defendants in this action and has never had anything to do with them. And his interrogatory responses state accordingly. He cannot attest to things that he does not know.

3. Mr. Stewart does not know with any specificity who has what knowledge about the trademark allegations. That is because he has never been to England or Pakistan, never met the owners of the co-defendant entities, and never dealt with any of the other parties in this action. Again, he cannot attest to information he does not know.

4. With respect to this issue, the interrogatory is directed to Mr. Stewart and Mr. Stewart has no statements from non-parties. As advised by the undersigned, the undersigned in an effort to procure documents and evidence in support of Mr. Stewart's defense was able to reach Mr. Abdul Kawasar who is a principal of Primo Dialler. Mr. Kawasar told the undersigned that he had no idea who Mr. Stewart was and was willing to execute a declaration to that effect. It is appropriate for Mr. Lurie to take Mr. Kawasar's deposition and ask him about the details of his conversation with undersigned. But it is unclear where the discovery violation is.

5. Mr. Stewart has turned over all statements, admissions or declarations that he has submitted in the related FLSA action and at his deposition in the FLSA action. These are all the "statements, admissions or declarations" that exist, in the event those statements are relevant to this action.

10. This interrogatory asks for the factual basis, not legal arguments, supporting each affirmative defense. While these affirmative defenses were not drafted by the undersigned, with the cooperation of Mr. Stewart, the undersigned laid out as best as possible in an interrogatory, the factual basis for Mr. Stewart's affirmative defenses.

11. Mr. Stewart's answer raised two sets of counter claims, one for infliction of emotional distress and one for legal fees in the event he should prevail. Only his claim for emotional distress was dismissed.

12. Plaintiffs' request is moot. As advised by the undersigned, Mr. Stewart was willing to provide his devices and disclose his passwords to Plaintiffs' forensic expert so Plaintiffs' could obtain the access desired and Mr. Stewart can prove without question the absurdity of Plaintiffs' claims. This was done so on January 4, 2018 and annexed is a copy of the email from Plaintiffs' expert affirming as such.

13. The same answer as (12) applies to (13).

With respect to the document demands, as an initial matter, the undersigned denies the allegation of tardiness. Attached is a copy of the outgoing email showing that the documents were not sent late.

Secondly, Plaintiffs request that Mr. Stewart produce documents he does not have. Mr. Stewart will happily give Plaintiffs access so that they could obtain the records from the parties that have those records. Mr. Stewart himself does not have the records Plaintiffs seek, nor is it fair for Plaintiffs to force Mr. Stewart to bear the expense of having those records produced. There is nothing improper about giving the opposing party authorization to obtain records from a third-party when the third-party has possession of the records.

Third, the document production are bates stamped with a page number. The undersigned is willing to identify which bates stamp correspond to which documents, but basically the documents produced were in the order of the demand. The first set of documents, stamped from Page 1 to Page 344 are responsive to Plaintiffs' demand 1, 2, and 9. The last set of documents stamped from Page 434 to 544 are responsive to Plaintiffs' last document demand, demand 18. Everything in between are stamped and organized, again, in order based on Plaintiffs' demands.

Mr. Stewart hopes that the following response fully addresses the issues as laid out in Mr. Lurie's letter.

Respectfully yours,
DAI & ASSOCIATES, P.C.
/s/ Jacob Chen
By: Jacob Chen. Esq.
