Joshua M. Lurie, Esq. (JL7272)
Lurie|Strupinsky, LLP
15 Warren Street, Suite 36
Hackensack, New Jersey 07601
Ph. 201-518-9999
Fax. 347-772-3074
Attorneys for Plaintiffs

| | |
|---|---|
| GEORGE KALTNER (individually), et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID STEWART (individually), et al.,<br><br>Defendants. | UNITED STATES DISTRICT COURT FOR THE SOUTHERN DISTRICT OF NEW YORK<br><br>Civil Case No. 7:16-cv-09337-KMK-LMS<br><br>DECLARATION OF JUSTIN MICHALSKI IN SUPPORT OF PLAINTIFFS' MOTION TO AMEND THE COMPLAINT |

I, Justin Michalski, of full age, under the penalty of perjury, do declare and say:

1. I am the principal of Sygena Corp., a forensic and general information technology company based in New Jersey.

2. I provide the within declaration based upon personal knowledge in support of the Plaintiffs' application to this Court to amend the complaint in this matter.

3. On January 5, 2018, I traveled to the offices of Dai and Associates in New York City to perform a forensic evaluation and imaging of Defendant David Stewart's iPhone and laptop.

4. Shortly before the forensic review was to take place, I was made aware that there were two devices for imaging – identified by counsel for Defendants, Jacob Chen, Esq., as "MacBook Air (13-inch, Mid 2013), macOS Sierra version 10.12.6, iPhone 6S plus."

5. Upon my arrival, I was provided with *two* MacBook Airs, not one, and no information about the second MacBook. Even more confusing was that the passwords were not

provided ahead of time and Defendant David Stewart was present at the forensic inspection. I conferred with Mr. Lurie who advised that he was not aware and was surprised that Mr. Stewart was present.

6. Fortunately, the software that I utilize, FTK Imager, permitted the imaging of the second laptop.

7. Initially, Mr. Chen and Mr. Stewart refused to provide the log in information. Eventually, after intimating that I would not leave, and nor would Mr. Stewart with his computers, until after I finished and this required the login information, Mr. Stewart, hesitantly, and quickly, logged into the administrative user account and I advised him to not do anything else so I could image the system.

8. Thereafter, I was provided, in writing, a list of passwords and confirmed receipt with Mr. Chen.

9. I then left Dai and Associates and prepared to process the images.

10. The images for both laptops were 256GB in size.

11. Due to the encryption on the second laptop, I requested from Mr. Lurie that he inquire from Mr. Chen what the encryption system was so that I could properly process the images. Thereafter, Mr. Lurie advised that Mr. Chen claimed that "FileVault" was used for the encryption. While this may be true, it became irrelevant because I was forced to use a work around as discussed below.

12. The primary system to process was the telephone due to the conversations and the apps thereupon.

13. The process of recovering readable data from an iOS backup involves a sophisticated, deep scanning of all data contained within the iPhone backup, reconstructing the

data, categorizing by type and writing it into a database so that it can be searched and reviewed. This can, and frequently does, include some previously deleted data.

14. Having an image of a computer or cell phone without any form of blueprint or road map can increase the amount of time spent to review the contents exponentially. Either type of system can contain tens of thousands or more documents including emails, notes, files, music, video, and not always in coherent locations. Therefore, I recommended that Mr. Lurie obtain some outline as to what kinds of documents would be present on the systems, otherwise, it could take hundreds of hours to review all documents and files on even an iPhone.

15. As for the laptops, additional steps were taken to enhance the review process. Specifically, I prepared to create an exact clone of the MacBooks from which the storage was imaged. I started searching for suitable MacBooks on which to write the forensically sound images in March of 2018.

16. Shortly thereafter, I was asked to halt the review. Apparently, the parties had begun mediation related to the companion FLSA case and there appeared, at least at the time, to be a real chance of settlement of all issues. Thus I ceased providing any services.

17. In late April, 2018, I was advised that mediation was not successful and Mr. Lurie began reviewing the cell phone image again.

18. On June 5, 2018, I understand that Mr. Stewart was deposed and advised, for the first time, that there were videos and other documents on the laptops that were not disclosed.

19. Once again, as I understand, no specific outline for what would be contained on the systems was provided.

20. On August 29th, two MacBooks, being duplicates of the imaged systems in specification and function, were delivered.

21. On September 4th, I completed the process of writing the captured disk images to their respective functionally duplicate MacBooks.

22. On September 5th, I began the process of accessing the MacBooks, including the need to force decryption of an encrypted volume due to a discrepancy in provided passwords.

23. On the second MacBook, I found evidence that the system was likely stolen. Specifically, the system username for a user account named "David Rose" was actually named "gkaltner".

24. I released the two MacBooks to Mr. Lurie at that time and I understand he has been reviewing them since that date.

I declare under the penalty of perjury that the foregoing is true to the best of my knowledge.

_____
Justin Michalski

Dated: September 24, 2018