UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| GEORGE KALTNER (individually), et al.,<br><br>　　　　　　　　　Plaintiffs,<br><br>v.<br><br>DAVID STEWART (individually), et al.,<br><br>　　　　　　　　　Defendants. | Civil Case No. 7:16-cv-09337-KMK-LMS |

　　　　Plaintiffs, GEORGE KALTNER (individually); COMPLIANT DIALER, INC. d/b/a AVATAR OUTSOURCING; VOICELESS TECHNOLOGIES, INC.; SALES TECHNOLOGIES, INC. (defunct); and AVATAR TECHNOLOGIES, INC. (defunct), ("Plaintiffs"), pursuant to Fed.R.Civ.P. 15(a)(2) and the Local Rules of Civil Procedure, submit the following memorandum of law in further support of their application to amend the Complaint.

## I.　INTRODUCTORY STATEMENT

　　　　On September 24, 2018, pursuant to Court Order, Plaintiff's filed their motion to amend the complaint. Defendants David Stewart and David TPO, LLC were required to file their response no later than October 1, 2018. They did not do so and, after Plaintiffs notified the Court of this conduct, these Defendants, through counsel, requested additional time claiming that the motion required an extensive response.

　　　　The Court provided seven additional days to these Defendants making their response due by October 8, 2018. They failed to respond in that time frame either. After the Court was again notified by the Plaintiffs of this misconduct, Defendants responded on October 11, 2018 (though

claiming it was October 10, 2018), with a disingenuous claim that they thought the Court granted them more time – apparently never reading the order and believing that the Court would rubber stamp their response. They also provided a short synopsis of their intended brief and, again, claiming it will take a significant amount of time.

The Court, clearly frustrated with this conduct of the Defendants, provided Defendants until October 19, 2018 to provide a response – which they did.

Defendants' response is not only not legally proper, it is violative of an attorney's obligations under the Rules with respect to candor to the Court in many ways. It seems as though the Defendants did not read the motion and the amended pleadings, because it cherry picks parts and ignores the rest. Further, it cites statutes – but cuts off the citation to ignore the authority which explicitly contradicts the arguments being made.

Defendants have improperly and unjustly multiplied the proceedings and further their wrongdoing by compelling the within reply to address all of the mistakes and improprieties in the response.

**II.    Legal Argument**

1. There is no undue delay as incorrectly claimed by Defendant.

We are simply shocked that the Defense claims undue delay. In a simple response – Defendants could have just stated "we did an excellent job of violating every obligation of a litigant within the Federal Rules with respect to discovery, played games, and when Plaintiffs finally got sick of our games and went to the magistrate – and now the district court judge, we can now claim that they are too late to amend."

While true that the *computers* were not accessed until late August/early September of 2018 while images were in the possession of Plaintiffs since January, Defendants ignore every

other paragraph within the certifications of counsel and the forensic IT specialist regarding what took place.  It ignores that there were software updates which allowed new, undisclosed, discussions and conduct to be viewed on Defendant Stewart's telephone *that did not exist at the time of the imaging*.  See Declaration of Joshua M. Lurie at Paragraphs 60, 69.  Defendants ignore that they:

- made promises with respect to providing additional documents and information;
- asked to delay the matter to try to settle;
- hid all the documents or deleted them; or
- did not provide all email addressed that were present, did not provide the passwords to the computers

They also fail to acknowledge (or just dispute) that Plaintiffs requested a road map which was never provided, sought several times to compel Defendants to provide proper discovery, that depositions did not take place until June, or anything else.  The only thing that they focus on is that Plaintiffs had the *images of the computers' hard drives* since January and did not crack them until later into September, 2018 and only after working for hours upon hours to crack encryptions which, similarly, were not disclosed.

The sole cited case by the Defense is inapposite and ignores the remaining portions of the citation.  Because we deem it important to point out the efforts made by these defendants to not provide the full text of cases, we cite the same citation, in full, below:

> "'Prejudice to the opposing party if the motion is granted has been described as the most important reason for denying a motion to amend. Prejudice may be found, for example, when the amendment is sought after discovery has been closed.... Undue delay [and] bad faith ... are other reasons for denying a motion to amend.'" Berman v. Parco, 96 Civ. 0375, 1997 WL 726414 at *22 [, 986 F.Supp. 195] (S.D.N.Y. Nov. 19, 1997) (Peck, M.J.), quoting 1 M. Silverberg, Civil Practice in the Southern District of

>New York § 6.26, citing Richardson Greenshields Sec., Inc. v. Lau, 825 F.2d 647, 653 n. 6 (2d Cir.1987); State Teachers Retirement Bd. v. Fluor Corp., 654 F.2d 843, 856 (2d Cir.1981); Bymoen v. Herzog, Heine, Geduld, Inc., 88 Civ. 1796, 1991 WL 95387 at *1-2 (S.D.N.Y. May 28, 1991); Priestley v. American Airlines, Inc., 89 Civ. 8265, 1991 WL 64459 at *2 (S.D.N.Y. April 12, 1991) ("*Insofar as the proposed claim is not predicated on facts learned after the pleading stage of the litigation, the resulting delay is not excusable.*... Undue prejudice warrants denial of leave to amend where the proposed claim will significantly increase the scope of discovery *when the case is ready for trial*.").
>
>"'Delay in seeking leave to amend a pleading *is generally not, in and of itself, a reason to deny a motion to amend*. However, the Court may deny a motion to amend *when the movant knew or should have known of the facts upon which the amendment is based when the original pleading was filed*, particularly when the movant offers no excuse for the delay.... Leave to amend a complaint will generally be denied when the motion to amend is filed solely in an attempt to prevent the Court from granting a motion to dismiss or for summary judgment, particularly when the new claim could have been raised earlier.'" Berman v. Parco, 1997 WL 726414 at *22, quoting 1 M. Silverberg, Civil Practice in the Southern District of New York § 6.26, citing, inter alia, Bymoen v. Herzog, Heine, Geduld, Inc., 1991 WL 95387, and Priestley v. American Airlines Inc., 1991 WL 64459.

Lyondell-Citgo Ref., LP v. Petroleos De Venezuela S.A., Not Reported in F.Supp.2d, 2004 WL 2650884 (S.D.N.Y. November 22, 2004) (emphasis added).  So, the sole case cited by Defendants really speaks to barring amendments when the Plaintiff knew the claims at the inception of the matter, delayed until after discovery, and then tried to amend to delay trial or otherwise stop a dispositive motion from being filed.  The case *does not* stand for the proposition that (and the Court would be hard pressed to find one that does) a litigant who hides information which is learned *after* discovery ended is now barred from amending.  This would flip the Rules on its head and give every defendant in the world an incentive to spoliate and otherwise commit malfeasance because they would know that it would stop any amendments.

Defendants further ignore that the purpose of the court's analysis is to confirm that amendments allow justice to take place and not award wrongful conduct and, had this information been learned up until, and even during trial, an amendment might be granted. See Fed.R.Civ.P. 15(a) and (b).

Similarly, Mr. Chen has not described any prejudice that Defendants would suffer. They only claim delay – and refuse to take responsibility for their own conduct in causing any delay.

None of this would have been necessary if Defendants were forthright and complied with their obligations under the Federal Rules with respect to discovery instead of playing games and costing Plaintiffs in excess of $40,000 in legal fees and costs to secure discovery, review documents, and try to find documents on more than half a terabyte of hard drive space and 128GB of phone memory without any guidance.

Defendants should not be awarded for their misconduct because it delayed getting to this motion.

2. The CFAA Claims are NOT time barred.

Plaintiffs find it incredulous that Defendants would state that the CFAA has a two-year statute of limitations. That is only partially accurate. 18 U.S.C.A. 1030(g) states that any action must be brought "within 2 years of the date of the act complained of *or the date of the discovery of the damage*" (emphasis added).

Contrary to Mr. Chen's blanket claims – which are provided by not reading the entire record – the damage was learned of in September of 2018. Prior to that date, Plaintiffs believed that Mr. Stewart had stolen Plaintiffs' trade secrets by soliciting them as identified in prior documents filed with this court (see, e.g., ECF Doc. No. 44 and pleadings related thereto). After reviewing the deleted text messages and Viber discussions, along with cracking the encryption to

see what was contained on the hard drives imaged off of Mr. Stewart's computers, Plaintiffs learned that it was actually Mr. Stewart, along with now known co-conspirators, who to collected stolen information from stolen computers and hacked email accounts. It was also in September that we learned of conspiracies between Mr. Stewart and others, identified in the Complaint, to break into the systems to steal client lists and other trade secrets.

As a result, Defendants' claims of being time barred are simply wrong.

3. <u>Plaintiffs DTSA claims are not time barred</u>.

Again, we question whether Defendants actually read the proposed amended complaint. They claim that nowhere in the complaint does it allege any acts to steal trade secrets after May 11, 2016 when the DTSA was enacted. They are, again, wrong and speculating.

As set forth in the certification of counsel, there was information found that, subsequent to May 11, 2016, Mr. Stewart sought to steal Plaintiffs' trade secrets. Indeed, one of the identified times was in December of 2017 when discussing this conduct with the Tals (proposed defendants).

Ultimately, the only thing that Mr. Chen is correct with is that we cannot seek any damages for violations of the DTSA that occurred prior to May 11, 2016. That does not mean that the claim is frivolous. It means that there are limitations to what conduct will be covered.

4. <u>Defendants' claims about protections under whistleblower provisions is incorrect</u>

Let there be no doubt, there is a protection from liability for one who has taken trade secrets for use in a whistleblower action *when that personal has acted legally*. However, the claims in the proposed second amended complaint are not as stated by Mr. Chen.

First, the claims with respect to the IRS whistleblower address the negligence and fraud claims already present. Mr. Stewart, simply, willfully caused damage to Plaintiff's financial

records due to his misrepresentations with respect to his abilities to manage the finances of the businesses. Now we know that he did so with the intent to file a whistleblower claim for the damage he created. Therefore, the withholding of this information is a discovery violation – and likely still a violation since it was information obtained illegally.

Second, *even if protected from civil liability* as to *certain* financial records used for the whistleblower claims – that would be limited to just that. Mr. Chen's brief does not explain why, for example, Mr. Stewart has digital images of Mr. Kaltner's computer, the emails of the CTO and VP of Sales (and others) related to contact they had with clients *and not financial or tax related*, why Mr. Stewart had all of his emails from the services he provided for Plaintiffs *YEARS* after his access was revoked and had produced, among other documents, privileged communications between various attorneys and Plaintiffs to which he was copied as an agent of Plaintiffs, or other documents *completely unrelated to any IRS or other Whistleblower claim*. Indeed, in the companion FLSA case, Mr. Stewart (through the same counsel, Mr. Chen) produced nearly a thousand pages of emails and other documents that had nothing to do with any financial records. These were documents that Mr. Stewart stole, put into a folder on his computer called "Dai and Associates" and gave to his attorneys for use of bringing *other* cases – not whistleblower matters. Included therein were files taken from these computers that are not even relevant to this matter, the companion FLSA case, or the DOL hearings. They relate to false claims by Jason Gentry (a proposed Defendant in the amended complaint and who has brought a frivolous action through Mr. Chen also before this Court), other unrelated people, client lists, personal communications, and other *unrelated* stolen documents.[1] None of this is at

---

[1] Plaintiffs are confident that, during the promotion hearing – that Mr. Chen failed to physically appear at – Mr. Chen argued that Mr. Stewart had the right to an image of Mr. Kaltner's computers, and his emails, as his personal assistant. Of course this runs contrary to the sworn statement of Mr. Stewart in this action

all relevant to reporting or investigating a suspected violation of the law – unless Mr. Chen is inferring that there are even more claims that Mr. Stewart is making against Plaintiffs that he is not disclosing.  We certainly hope that this is not the obstruction of justice he threatened against the undersigned and Plaintiffs!

Ultimately, the whistleblower protections under SOX do not apply here since they would, at best, protect someone who proceeding in good faith in their claims (not someone who caused damage to the financial records in order to, in bad faith, and with unclean hands) seeks to bring allegations of wrongful conduct to the government.  Similarly, they would, at best, protect Mr. Stewart from the theft of *relevant* documents and *not* the thousands upon thousands upon thousands of unrelated, stolen documents that Mr. Stewart obtained – and gave to his attorneys – by accessing systems *after* his right to access was revoked and otherwise using those stolen documents to further his own business prospects – including opening competing businesses by soliciting Plaintiff's customers through stolen client lists.

As a result, Defendants' arguments are frivolous.

5. <u>Defendants are wrong that no predicate acts have taken place for the RICO claims (acknowledging a typo in the proposed Amended Count 18)</u>

It is frustrating that the Defendants cannot distinguish between civil trade secrets violations under the DTSA (18 U.S.C. 1836, *et seq*.) and criminal theft of trade secrets (18 U.S.C. 1832), an identified predicate RICO act (19 U.S.C. 1961), which is separate and apart from civil liability.  Thus, contrary to Mr. Chen's claims, a proper predicate act has been claimed and simply more improper multiplication of the proceedings.

---

that he was the billing coordinator for Plaintiffs with "some" personal assistant duties.  See ECF Doc. No. 24 at P. 3.  Obviously, Mr. Chen has sought to change this narrative since Mr. Stewart's unsolicited statements contradict those that his lawyer wrote for him.  It is simply more evidence of the acts of these Defendants to hide the truth from the Plaintiffs and the lack of candor towards this court.

Further, and again, the theft of trade secrets, and conspiracy to do so, relates to business records, client lists, customer information and other protected information *and not the financial records collected and used for the IRS Whistleblower action!*[2]

Similarly, the damages alleged are *not* related *solely* to Mr. Stewart's theft of financial records for use in a whistleblower action – rather it includes client lists and other trade secrets as well.

Additionally, as to whether this claim has anything to do with stopping the communications with 17 CFR 240.21F-17(a) as claimed in the first letter [ECF Doc. No. 121 at P. 3], nothing in this matter has *anything* to do with the SEC – and this just adds to the frustration of handing this matter, the innumerable irrelevancies raised and unjust multiplication of proceedings.

6. Defendants' Frivolous Claims as to Lack of Pleading Damages

Defendants finalize their arguments with a frivolous claim that Plaintiffs have not sufficiently plead damages. They provide no citation for their argument that a complaint must identify, with specificity, the financial damages suffered – and for good reason.

This appears to be Defendants' misunderstanding of the difference between a frivolous pleading standard for an amendment, which is viewed as a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and not an argument about underlying facts. Due to the Defendants' conduct, we must return and go back through discovery due to Mr. Stewart's conduct. Perhaps, later, Defendants can argue about lack of damages – but this is not the time. Plaintiffs allege

---

[2] Plaintiffs have a hard time understanding why Defense counsel keeps raising this one issue unless it is an attempt to divert attention away from the very illegal conduct of his client that he knew, or should have known about but did not disclose!

damages well in excess of $1,000,000.00 from the Defendants conduct (likely far more). This is more than sufficient at this juncture.

## Conclusion

For the reasons set forth herein, Plaintiffs respectfully request that the Court grant their motion to Amend the Complaint.

DATED this **26th** day of **October, 2018**.

                                                Respectfully Submitted,

                                                Lurie|Strupinsky, LLP
                                                Attorney for Plaintiffs
                                                15 Warren Street, Suite 36
                                                Hackensack, New Jersey 07601
                                                Ph. 201-518-9999

                                                By: /s/ Joshua M. Lurie, Esq.____
                                                    Joshua M. Lurie (JL7272)
                                                    jmlurie@luriestrupinsky.com